# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. J. BLACKWELL, Minor.

UNPUBLISHED
November 9, 2017

No. 338272
Wayne Circuit Court
Family Division
LC No. 14-516138-NA

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her infant son, JB, at the initial disposition due to her unwillingness to address mental health issues, the same reticence that had led to the termination of her parental rights to another child. We affirm.

## I. BACKGROUND

Respondent-mother was born in 1989. Her own mother's parental rights were terminated and she was adopted at age 16 by her maternal aunt and uncle—the Ramirezes. Respondent is cognitively impaired and was placed in special education classes growing up. At age 16, respondent was also diagnosed with bipolar disorder. In approximately 2012, respondent stopped taking her medication and attending therapy, and has no intention of resuming treatment.

Respondent gave birth to a daughter in December 2012, and a son in January 2014. Respondent did not bring her daughter home from the hospital, leaving her to the Ramirezes' care. They continue to serve as the child's guardian. The Department of Health and Human Services (DHHS) intervened three months after respondent's son's birth. The child was placed with other relatives and respondent's rights terminated because her untreated mental health issues impaired her ability to parent.

On November 18, 2016, respondent gave birth to another son, JB. Respondent and her boyfriend planned to care for the child together. JB had serious health issues, however, requiring an extended hospital stay. A feeding tube was surgically implanted because JB could not suck, open heart surgery was performed to correct a heart murmur, and he required close monitoring as he suffered from hemophilia and had only one functioning kidney. JB was placed in the Ramirezes' care upon his release from the hospital.

In the meantime, a social worker assessed respondent and her boyfriend's home and found it unsafe for a child. The couple proceeded to move into several other unsatisfactory

-1-

homes. The caseworker advised respondent that she would need to resume treatment for her bipolar disorder to regain custody, but respondent failed to do so. And despite being given bus tickets, respondent and her boyfriend failed to consistently attend parenting time sessions. When they did attend, respondent left JB's care to his father.

Based on this evidence, the court took jurisdiction over JB. The DHHS sought termination of respondent's parental rights at the initial disposition without providing services. At the adjudication, JB's father testified that the plan was for respondent to care for the baby while he worked. He admitted that respondent was not yet able to independently care for the child, but thought she could benefit from parenting classes. The family's caseworker testified that it would "take a lot more" to prepare respondent to care for JB's special needs. At the termination hearing, the DHHS also presented an evaluation of respondent by the Clinic for Child Study. During the evaluation, respondent "reported "I don't think I can care for [JB] by myself because he has a lot of issues going on,' " and reiterated that she would not take medication to treat her bipolar disorder.

Ultimately, the court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(g), (i), and (j), based on her prior termination, unaddressed mental health issues, and inability to safely care for JB. The court did not terminate the rights of JB's father, instead ordering services.

## II. STATUTORY GROUNDS

On appeal, respondent contends that the circuit court erred in terminating her parental rights without first providing her services. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court may terminate a parent's rights at the initial disposition if jurisdiction is supported by a preponderance of the evidence and the DHHS presents legally admissible evidence supporting the termination ground. MCL 712A.2(b); MCR 3.977(E). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The circuit court terminated respondent's parental rights pursuant to three separate statutory grounds, MCL 712A.19b(3)(g), (i), and (j), which provide:

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A challenge to the absence of services is a challenge to the sufficiency of the evidence supporting the grounds for termination. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). However, services are not always required. *In re Terry*, 240 Mich App 14, 25 n 4; 610 NW2d 563 (2000). For example, the DHHS "is not required to provide reunification services when termination of parental rights is the agency's goal," *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009), as when termination is sought at the initial dispositional hearing. *Moss*, 301 Mich App at 90-92.

It is undisputed that respondent's parental rights to another child were involuntarily terminated in a prior proceeding and reasonable efforts to reunite the child with the family are not required in such circumstances. MCL 712A.19a(2)(c). Respondent ceded custody of her first child and lost custody of her second immediately after their births. Thereafter, respondent declined to restart treatment for bipolar disorder. She had not begun treatment again before JB's birth and expressed that she had no intent to do so after. The DHHS could lead respondent to services, but it could not force her to take advantage of them. And respondent admitted that in her current state she could not independently care for JB. There simply is no possibility that respondent could regain custody of JB within a reasonable time and provide a safe home if she was unwilling to cooperate. Accordingly, the DHHS was not required to offer services and was permitted to seek termination at the initial disposition. The evidence presented was more than sufficient to establish the statutory grounds cited by the DHHS and we discern no error.

### III. BEST INTERESTS

Respondent also argues that termination of her parental rights was not in JB's best interests as he was placed with his adoptive maternal grandmother. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The lower court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The parent's history of mental health issues is a proper consideration. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33

(2001); Also relevant are the advantages of the child's foster placement over placement with the parent, *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009), and the length of time the child has been in care, *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015). Placement with relatives weighs against termination, however, and the court must "explicitly address" this factor. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010); *Olive/Metts,* 297 Mich App at 43. "With respect to the trial court's best-interests determination, we place our focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016), citing *Moss*, 301 Mich App at 87.

JB is a special needs child with several serious medical conditions. Respondent is cognitively impaired and refuses to treat her bipolar disorder. She has admitted that she is unable to care for JB. Although JB was placed with her adoptive mother, respondent did not visit JB on a consistent basis and when she did, she generally left the childcare responsibilities to the baby's father. Respondent did not attend any of JB's medical appointments and thus was "in the dark about how to meet the child's medical needs." Respondent lacked suitable housing for herself and the child, while JB was placed in the same home as his sister. Contrary to respondent's contention, the court gave due consideration to the relative placement, addressing it in both the bench ruling and in the termination order itself. The court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests.

We affirm.


/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher

-4-